LONG v. STATE.

Opinion delivered November 5, 1923.

1. FALSE PRETENSES—SUFFICIENCY OF PROOF.—An indictment for procuring money under false pretenses which alleged that defendant falsely stated that he was the representative of a large and prosperous oil company, and was the owner of a large number of oil leases in a certain county, and that he had completed plans for the immediate drilling of an oil well, is sustained by proof that defendant falsely alleged that he had completed plans for the drilling of a well, though there was no proof of the falsity of the other statements.

2. FALSE PRETENSES—DESCRIPTION OF MONEY—ALLEGATIONS AND PROOF.—In an indictment for receiving money under false pretenses, the money must be described with the same particularity and certainty as is required in an indictment for larceny, and such allegation must be sustained by proof as to the kind of money described therein.

Appeal from Pope Circuit Court; *J. T. Bullock,* Judge; reversed.

*Ward & Caudle,* for appellant.

*J. S. Utley,* Attorney General, *Jno. L. Carter, Wm. T. Hammock* and *Darden Moose,* Assistants, for appellee.

WOOD, J. This is an appeal from a judgment of the Pope Circuit Court sentencing the appellant to imprisonment in the State Penitentiary for a period of two years. The indictment on which appellant was tried and convicted, omitting the formal parts, is as follows: "The said Robert Long, in the county and State aforesaid, on the 10th day of May, 1922, then and there intending to cheat and defraud one Ed Templeton, did wilfully, unlawfully, fraudulently, falsely and feloniously represent and pretend to the said Ed. Templeton that he, the said Robert Long, was the representative of a large and prosperous oil company, an active member thereof, and was the owner of a large number of oil leases in Pope County, Arkansas, and that plans had been completed for the immediate drilling of an oil well, and by reason of said wilful, unlawful, false, felonious and frauduent pretense, in manner and form as aforesaid, did then and there

wilfully, unlawfully, feloniously, fraudulently induce the said Ed Templeton to purchase and trade for $300 of alleged stock in said company and to part with the possession of and deliver to him, the said Robert Long, $300, in gold, silver and paper money of the value of $300, the property of the said Ed Templeton, with the wilful, unlawful, fraudulent and felonious intent then and there and thereby to deprive the said Ed Templeton of his said money as aforesaid, and cause him to be injured in his lawful rights and estate; when in truth and in fact the said Robert Long was not the representative of a large and prosperous oil company; was not an active member thereof, and was not the owner of a large number of oil leases in Pope County, Arkansas, and that plans had not been completed for the immediate drilling of an oil well in Pope County, Arkansas; all of which said false pretense and representations, in manner and form aforesaid, were then and there well known to him, the said Robert Long, to be wilfully, unlawfully, feloniously, falsely and corruptly untrue, * * * against the peace and dignity of the State of Arkansas.''

Ed Templeton, the prosecuting witness, testified that the appellant came out in witness' neighborhood, taking leases for oil, at a meeting he had called, representing that he had oil stock for sale. He stated that he was going to dig a well, and wanted to lease land; that he had made preparations to dig; had $50,000 already, the big money in the bank at Little Rock and his personal money in the England bank. Witness could not read or write. Witness saw appellant the next morning after the meeting that night, and paid him $300. Appellant said that Zeke's wife had given him a thousand dollars to sink the first well on his place. Appellant told witness that he had paid some white men $200 to show him where the oil was, and that they had piled up some rocks at the place. Witness described the trip he made with appellant endeavoring to find the place. They piled up rocks all about at different places, and had witness and others

to drive down sticks there. Witness didn't see any white folks there. The next time witness saw appellant he wanted witness to go to Little Rock and join the company down there. Witness went down there with appellant, and paid him $250 again. Appellant told witness that this was for promotership. He gave witness another share in the promoter, and witness paid him $250 for that. The next money witness let him have was about the land. He got to persuading witness to help him out in taking care of his father and two sisters, who were destitute of a home, and he was to secure witness, and stated that, as soon as he got home and got the land fixed up, he would turn over to witness all the papers necessary to secure it—would turn over the deed. He stated that the place was a large farm of 380 acres, and had renters on it. He never turned over the deed to witness. Appellant next told witness he was getting up a bond for protection, and wanted witness to pay some on it, and witness paid him $25 on that. Witness paid him as much as $3,500 in all, and never got anything for it. The reason witness let him have the money was because he said he had all this money, and one thing and another, and witness did it because he really thought he could get his money back. Appellant said he was going to dig a well if he didn't get but forty acres or twenty-five acres. The reason witness paid him the $300 was that he promised to drill the first well on witness' land. He gave witness a receipt for the $300. The $300 was not for the purpose of buying stock in any concern. Witness was not buying stock with the $300—just gave him the $300 for the purpose of getting him to drill the first well on witness' land. Appellant never drilled the well. Witness further testified that, after he paid the $300 in order to get appellant to drill the first hole on witness' land, he then paid appellant $250 to join a company, and afterwards bought an interest in the leases. $1,000 worth, and then loaned appellant $250 and took his note for it.

Other witnesses testified that the appellant represented, at a meeting, that he was agent for the Block Oil

& Gas Company of El Dorado, and that, at another meeting afterwards, he said that he was operating for himself. He represented that he had made arrangements with white men at Morrilton to drill a well. He stated, among other things, that he had money to drill the well, and that $18,000 was in the Rainwater Bank at Morrilton. He positively represented that he was going to dig a well. Appellant came among them representing that he was selling share of stock for the Block Oil & Gas Company, and on another trip he came representing that he was operating for himself and was taking leases. It was shown that appellant disappeared from Pope County, and was finally located in Atlanta, Georgia, and arrested there and afterward brought back to Arkansas.

Wood Rainwater, the president of the Rainwater Bank at Morrilton, testified that appellant never had any money in his bank in 1922.

The testimony was substantially as set forth above, and at the conclusion of the introduction thereof the appellant asked the court to instruct the jury, in its prayer No. 1, to return a verdict of not guilty because the allegations of the indictment had not been sustained by the proof, and further asked the court to instruct the jury, in its prayer No. 2, as follows: "That the ownership and description of the money alleged to have been obtained by false pretenses are material allegations in the indictment, and, before you would be justified in convicting the defendant, the State must prove that the defendant procured from Ed Templeton the sum of $300 of the kind of money alleged in the indictment, and that said money must have belonged to Ed Templeton, and the proof that other moneys were obtained from Ed Templeton would not justify a conviction under the allegations in this indictment, but is only admitted for the purpose of showing defendant's general method of transacting business."

1. The court did not err in refusing appellant's prayer for instruction No. 1 set out above. There is no

testimony in the record to show that the appellant was
not the representative of a large and prosperous oil com-
pany, and that appellant was not an active member
thereof, and there was no testimony to prove that the
appellant was not the owner of a large number of oil
leases in Pope County. But there was testimony from
which the jury might have found that the appellant had
not completed plans for the immediate drilling of an
oil well. It could serve no useful purpose to discuss in
detail the facts on this issue which the testimony tended
to prove. Suffice it to say it was an issue for the jury.

2. The court erred in refusing appellant's prayer
for instruction No. 2. In *Maxey* v. *State,* 85 Ark. 500,
we said: "It has been held by this court that, in an
indictment for receiving money under false pretenses,
the money must be described with the same particularity
and certainty as is required in an indictment for larceny.
It has also been held that the allegations of the indict-
ment must be sustained by proof as to the kind of money
described therein." See also *Silvia* v. *State,* 117 Ark.
108, and cases cited in the above cases. The allegations
of the indictment, according to the above cases, met the
requirements of the statute in describing the money as
"gold, silver and paper money of the value of $300."
But there was no proof in the record showing the kind of
money that appellant obtained. It was essential that the
allegations of the indictment in this respect be estab-
lished by the evidence.

For the error indicated, the judgment is reversed
and the cause remanded for a new trial.